# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>PATRICK RED BIRD,<br><br>  Defendant. | 3:20-CR-30026-RAL<br><br>**REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO DISMISS OR IN THE ALTERNATIVE TO SUPPRESS** |

Patrick Red Bird ran from a tribal officer and took refuge in a trailer house he had been staying in. Officers tracked him to the house (which they mistakenly believed was abandoned), entered it without a warrant, and arrested him inside. On the way to the jail, Red Bird assaulted (choked) the arresting and transporting officer. After being indicted federally for the assault, Red Bird moved to dismiss the indictment or, in the alternative, to suppress evidence and certain post-arrest statements he made, on Fourth and Fifth Amendment grounds and under *Miranda*. The Court recommends that the dismissal motion be denied in its entirety and that the suppression motion be granted in part and denied in part for the reasons more fully explained below.

## BACKGROUND

Shortly before 2:00 p.m. on December 27, 2019, a woman called the Rosebud Sioux Tribe Law Enforcement Services (RSTLES) dispatch and reported that a man had hit the back of her car and took off walking towards the YMCA building in Mission, South Dakota. Moments later, another woman called dispatch and reported that a man had fallen face first into the snow near the Legal Aid building in Mission. Both women said that the man was wearing a black hoodie sweatshirt with a skull on it.

RSTLES Officer Bryan Waukazoo responded to the calls. When he arrived in the area, he spotted Red Bird carrying a black sweatshirt sit down and fall over along the roadway. Waukazoo activated his emergency lights and tried to make contact with Red Bird. As he approached, Waukazoo observed Red Bird jump up and run in front of a man who was walking by. Red Bird rolled his shoulders back, clenched his fists, and said something as if he were going to fight the man.

Officer Waukazoo got out of his patrol car and identified himself. Red Bird, however, started walking away and then running, ignoring commands to stop. Waukazoo returned to his car and began following Red Bird. Waukazoo observed Red Bird race through an empty lot and drove one street down in an attempt to cut Red Bird off. When Red Bird did not reappear, Waukazoo requested assistance in locating him.

Mission City Police Chief Barry Bailey and Todd County Sheriff Wes Sudbeck arrived soon after and searched the area. Officer Waukazoo and Sudbeck observed footprints in the snow which led them to Daran Bruce's trailer house nearby.

Waukazoo knocked on the front door several times and announced his presence, but no one responded. Because there was no doorknob or lock on the door, the opening to the inside widened each time he knocked. Based on what he saw in and outside the house, Waukazoo believed it was abandoned.

Officer Waukazoo and Sheriff Sudbeck could hear music coming from inside the residence. Waukazoo announced his presence several more times, demanding that any occupants identify themselves, but no one responded. After a brief flashlight search of the house, Waukazoo located Red Bird hiding in a back closet. Red Bird crawled out of the closet and Sudbeck handcuffed him. The officers identified him, using a tribal ID he had on his person. Waukazoo requested a warrant check and both officers escorted Red Bird out of the house to Waukazoo's car. Dispatch separately called Waukazoo and informed him that Red Bird had outstanding warrants for his arrest.

Officer Waukazoo transported Red Bird to the Rosebud jail. While en route, Red Bird slipped his handcuffs from behind his back and showed Waukazoo what he had done. Waukazoo stopped the car and, as he attempted to fix the wrist restraints, Red Bird pulled away and shoved Waukazoo in an effort to escape.

In response, Officer Waukazoo pushed Red Bird back into the car. Red Bird flailed his arms, hitting Waukazoo in the face. Red Bird then grabbed hold of, and began to squeeze, Waukazoo's neck and throat. Waukazoo needed four punches to the face to break Red Bird's grip. Once he had done so, Waukazoo forced Red Bird into the car and sprayed him with an OC agent. Red Bird quit resisting with help from Sheriff

3

Sudbeck and Chief Bailey.  Waukazoo shored up the failed restraint system and drove Red Bird, with lights and siren on, to the jail.

Tribal authorities charged Red Bird with disorderly conduct, resisting arrest, escape, and aggravated assault.  A federal grand jury later indicted Red Bird for assaulting, resisting, and impeding a federal officer (often called an "AFO").  He has since pled not guilty to the AFO charge and moved to dismiss the Indictment, or in the alternative, to suppress evidence of his alleged assaultive conduct on the ground that Officer Waukazoo and Sheriff Sudbeck violated his Fourth Amendment and Due Process rights when they entered the house, without a warrant, consent, or exigent circumstances, and arrested him.  The Court held a trifurcated hearing on the motion at which it heard testimony from 11 witnesses and received 14 exhibits into evidence.

## DISCUSSION

### A.  Standing

The law uses the term "standing" to define the class of persons who challenge the legality of a search or seizure and demand the suppression of evidence seized under the Exclusionary Rule.  Standing "depends not upon a property right in the invaded place, but upon whether the person . . . has a legitimate expectation of privacy in [that] place."[1]  A subjectively held expectation of privacy is legitimate if it is "one that society

---

[1]*Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

is prepared to recognize as 'reasonable.'"[2]  As "an unremarkable proposition," a person may have a legally sufficient interest in a place other than his home to justify protection from unreasonable governmental intrusion.[3]  An overnight guest has a reasonable expectation of privacy in a friend's residence even though he has no legal interest in the dwelling and lacks any legal authority to determine who may enter the home.[4]

Whether Red Bird has standing to contest the entry into Bruce's trailer house and the warrantless arrest of him inside turns on his status:  Was he someone with permission to be in the house and had – within – his own legitimate expectation of privacy?  The burden is on Red Bird to show his presence was not wrongful (i.e., he had the right to be on the premises).  Red Bird has carried his burden and thus has standing to object to the entry and search of the house and to his arrest.

Although Red Bird, Bruce, Linda Garriott, and Lauren Stanley were not very credible witnesses (they contradicted each other or were impeached), there were other witnesses and extrinsic evidence that collectively showed that:

1.    Red Bird was an overnight guest at the time of the search and arrest;[5]

---

[2]*Id*. at 143-44, n. 12 (*quoting Katz v. United States*, 389 U.S. 347, 361 (1967)  (Harlan, J., concurring)).

[3]*Rakas*, 439 U.S. at 142.

[4]*See Minnesota v. Olson*, 495 U.S. 91, 98-100 (1990).

[5]*See* Mot. Hrg. Tr. 181-82; 188-92, 230-31 (July 20, 24, 28, 2020).

2.      He stored items – two duffel bags of clothes and a vase – in the home through and after the arrest date;[6]

3.      He had been allowed to stay at the residence and store his belongings there many times before being arrested;[7] and

4.      He had a reasonable expectation of privacy in his commorancy.[8]

## B. Abandonment and Exigent Circumstances/Hot Pursuit

Even so, the officers were justified in entering the trailer, without a warrant or consent, and arresting Red Bird based on their reasonable belief that the house had been abandoned or because of hot pursuit.

### 1. Abandonment

A warrantless search of abandoned property "does not implicate the Fourth Amendment, for any expectation of privacy in the item searched is forfeited upon its abandonment."[9]   Abandonment for purposes of the Fourth Amendment differs from

---

[6]*See* Mot. Hrg. Tr. 191-92; 195-96, 235-36; Mot. Hrg. Ex. E (July 20, 24, 28, 2020).

[7]*See* Mot. Hrg. Tr. 188-92, 235-36.

[8]*See Olson*, 495 U.S. at 98-100; *United States v. Waller*, 426 F.3d 838, 844-45 (6th Cir. 2005); *United States v. Davis*, 932 F.2d 752, 757 (9th Cir. 1991); *Hanna v. State*, 591 A.2d 158, 163-64 (Del. 1991); *see generally* 6 Wayne R. LaFave, *Search and Seizure*, §11.3(c) (5th ed. 2012 & 2019-20 Update) (invitees, guests, and persons with effects on residential premises).

[9]*McKenney v. Harrison*, 635 F.3d 354, 358 (8th Cir. 2011) (*quoting United States v. James*, 534 F.3d 868, 872 (8th Cir. 2008)); *see also United States v. Hoey*, 983 F.2d 890, 892 (8th Cir. 1993) ("It is well established that the warrantless search of abandoned property does not constitute an unreasonable search and does not violate the Fourth Amendment.").

property law abandonment.[10]  "Indeed . . . courts have repeatedly found abandonment for constitutional purposes in situations that might not support a finding of abandonment in the common-law understanding."[11]

Here, the trailer house was not actually abandoned.  And Red Bird, as an overnight guest, possessed a reasonable expectation of privacy in the home.  The issue then is whether the officers' belief that the residence was abandoned excused their warrantless entry.

Officers are not required always to be correct, just reasonable.[12]  A mistake of fact, that is objectively reasonable, does not violate the Fourth Amendment.[13]  In determining what is reasonable, a court is to apply an objective standard, looking at whether "the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief" that the search was permissible.[14]

Officer Waukazoo believed that the trailer house was abandoned and this belief was objectively reasonable in light of the totality of the circumstances present.  These facts, gleaned from the record, support this conclusion:

---

[10]*See United States v. Harrison*, 689 F.3d 301, 307 (3d Cir. 2012).

[11]*Id. (quoting United States v. Redmon*, 138 F.3d 1109, 1127 (7th Cir. 1988) (Flaum, J. concurring) (*en banc*)).

[12]*See United States v. Rodriguez*, 497 U.S. 177, 185-86 (1990).

[13]*See McKenney*, 635 F.3d at 358.

[14]*Rodriguez*, 497 U.S. at 188.

1.      The yard had trash strewn about it.

2.      Neither the walkway, through the yard, nor the front porch to the house had been shoveled or cleaned of snow.

3.      A large leather Lazy Boy armchair, covered in snow, sat tipped against a porch railing.

4.      Next to the chair on the porch was a lone shoe with snow that had collected in it.

5.      No vehicles were at or immediately outside the house.

6.      An abandoned trailer nearby (which Waukazoo checked in his search for Red Bird) had about the same decrepit interior as the house.

7.      The front door, which was ajar, had no doorknob to it, lock, or means to fully close or secure the door.

8.      No one responded after Waukazoo knocked and announced himself four times.

9.      With each knock, the door opened more and more, revealing a dark interior with debris everywhere.

10.     The inside was cold – no heat was on – and had a strong stench to it.

11.     The oven door did not close all the way and boxes and garbage were piled on top of the stove.

12.     A table (with many items stacked on it) blocked the refrigerator and adjacent cabinet doors and desk drawers in the kitchen were missing.

13.     There were no lights on, sounds from the furnace or appliances, or indications that the house had electrical power or running water.

14.     An unsheeted bed  mattress and box spring stood upright on their sides in two places and a daybed had all sorts of things laying on the bare mattress to it.

15.     Walls were riddled with holes and windows had no coverings on them.

16.     The house did not look to be inhabitable.[15]

Based on these facts, officers were reasonable in their mistaken belief that the house was

abandoned.[16]

The Court recognizes that there is no "trashy house exception" to the warrant

requirement.  But given all that they perceived in both the exterior and interior of the

---

[15]*See* Mot. Hrg. Exs. 5, 8, B, D; Mot. Hrg. Tr. 11, 34-35, 61, 66, 69, 82-83, 92-93.

[16]*See McKenney*, 635 F.3d at 359; *see also Harrison*, 689 F.3d at 310-12 (police officers were reasonable in their mistaken belief that house was abandoned and thus were permitted to conduct a warrantless search of it); *United States v. Knepper*, 256 Fed. Appx. 982, 984 (9th Cir. 2007) (district court not clearly erroneous in finding that bedroom, where defendant's backpack found, was abandoned given the ramshackle appearance of the room as well as the lack of personal effects and other signs of recent habitation); *United States v. Sledge*, 650 F.2d 1075, 1080 (9th Cir. 1981) (if one who has abandoned property from all outward appearances in fact has retained subjective expectation of privacy, then search of property is nevertheless valid if that expectation is intrinsically unreasonable or not otherwise entitled to protection); *Olvera v. City of Modesto*, 38 F.Supp.3d 1162, 1172 (E.D. Cal. 2014) (police officers' warrantless entry into house that *appears* to be abandoned, but actually  is not, does not violate the Fourth Amendment when they act on objectively reasonable mistake of fact); *see and compare with State v. Brown*, 216 N.J. 508, 539-41, 83 A.3d 45, 63-64 (2014) (no reasonable belief that premises abandoned notwithstanding deplorable condition of house, including broken windows, missing electric meter, living room in disarray with trash bags of old clothes, soda cans, and maybe upside-down furniture, where defendants were seen using key to enter property and then lock it as they exited and both front and back doors were secured to keep intruders out); *State v. Carter*, 54 So.3d 1093, 1095-96 (La. 2011) (no showing that officers reasonably believed house was abandoned as detective did not testify it appeared abandoned and officers on scene did not report that they viewed a dilapidated structure boarded up and surrounded by overgrown weeds or that they believed home had been abandoned from any reliable sources).

trailer house, there were enough additional facts to make officers believe the house was forsaken.[17]

That officers could hear music playing[18] does not cut against the reasonableness of their belief that the house was deserted.  The Eighth Circuit recently rejected a similar argument (involving a running fan), pointing out that a reasonable officer could have likewise concluded that anyone in the house was a trespasser with no privacy interest under the Fourth Amendment.[19]

### 2.  Hot Pursuit

Regardless, "[p]olice officers may enter a premises without a warrant when they are in hot pursuit of a fleeing suspect."[20]  Hot pursuit alone is enough to support the warrantless entry into a residence.[21]  The Supreme Court has identified two factors to consider in determining whether hot pursuit creates an exigency:  (1) the gravity of the

---

[17]*See Harrison*, 689 F.3d at 311.

[18]*See* Mot. Hrg. Tr. 60, 69.

[19]*See McKenney*, 635 F.3d at 359 (*citing United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998)); *see also Harrison*, 689 F.3d at 305, 310-12 (officers saw candlelight through window before entering house).

[20]*United States v. Anderson*, 688 F.3d 339, 344 (8th Cir. 2012) (*quoting Kentucky v. King*, 563 U.S. 452, 460 (2011)); *see also Olson*, 495 U.S. at 100-01; *United States v. Santana*, 427 U.S. 38, 42-43 (1976).

[21]*See Anderson*, 688 F.3d at 344; *see also United States v. Schmidt*, 403 F.3d 1009, 1015 (8th Cir. 2005) (Supreme Court has "endorsed the idea that hot pursuit can justify a warrantless entry even in the absence of another concern that requires swift police action").

underlying offense and (2) whether the government can demonstrate an "immediate or continuous" pursuit of the suspect from the scene of the crime.[22]

Officer Waukazoo and Sheriff Sudbeck entered the house in search of Red Bird who (1) matched the description of two calls for service; (2) sat down and fell over next to an in-town roadway; (3) obstructed and uttered words to another man walking by and assumed an assaultive posture as if to provoke a fight; and (4) scampered off on foot when Waukazoo confronted him.[23]  Waukazoo had probable cause to arrest Red Bird but only for one or two tribal misdemeanor offenses.  Did hot pursuit permit Waukazoo and Sudbeck to make a warrantless entry into the trailer and arrest Red Bird?  And could they arrest him for assaulting, resisting, opposing, impeding, intimidating, and interfering with his own-earlier-arrest and detention?  The short answer to both questions is "yes."

The hot pursuit exception to the warrant requirement has never been explicitly limited to felony offenses.  Although the Supreme Court has said that "an extremely minor" offense cannot sustain a constitutional exigency for a warrantless home entry,[24] the Court did not lay down a categorical approach for all cases involving minor

---

[22]*Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

[23]*See* Mot. Hrg. Tr. 9-10, 31, 39-42, 44, 46, 53, 56, 91-92, 94-95, 98-99; *see also* Mot. Hrg. Ex. 2 at 2 ("Looks like he's trying to fight someone.").

[24]*See Welsh*, 466 U.S. at 753.

offenses, especially jailable ones.[25]  And courts have held that officers may make a hot pursuit entry into a home, without a warrant, to capture an eluding suspect for a jailable misdemeanor committed in the officers' presence.[26]

Officer Waukazoo arguably had probable cause to arrest Red Bird for resisting arrest – a jailable offense under tribal law – based on Red Bird's conduct in preventing Waukazoo from affecting an arrest or detention and Waukazoo's reasonable belief that Red Bird was trying to harm the man he jumped out at and ran around.[27]  The offense was serious enough to permit Waukazoo and Sheriff Sudbeck to search for, and apprehend, Red Bird on the premises.  Probable cause for that arrest materialized when Red Bird refused to heed to Waukazoo's commands on the street and absconded.

So what about Officer Waukazoo and Sheriff Sudbeck's pursuit of Red Bird – was it immediate or continuous?  Or did it "cool" after Red Bird took off running and while officers were tracking him, and his footprints, in the snow?  The response to these questions is two-fold.

---

[25]*See Stanton v. Sims*, 571 U.S. 3, 8-9 (2013); *see also Welsh*, 466 U.S. at 749, n.11 ("[W]e have no occasion to consider whether the Fourth Amendment may impose an absolute ban on warrantless home arrests for certain minor offenses.").

[26]*See generally* William E. Ringel, *Searches and Seizures, Arrests and Confessions*, §10.9 (2d ed. & March 2020 Update) (Entry of Premises – Hot Pursuit); 5 Am.Jur.2d *Arrest*, §98 (Feb. 2020 Update) (When police offers are in hot pursuit of a suspect, who flees to a house to avoid arrest, they may enter without a warrant for jailable misdemeanors because they are not "minor offenses" under *Welsh*.).

[27]*See* Mot. Hrg. Tr. 10, 26, 44, 46, 49-50, 63, 84, 92, 94-95, 98-99; Mot. Hrg. Exs. 2 at 2 & 6 at 2-3, 6.

First, Red Bird's arrest was set in motion by his evasive actions in a public place.[28]  Before ducking into the house, Red Bird was "not in an area where [he] had any expectation of privacy" and could have been arrested at that time without implicating the Fourth Amendment.[29]  "'[H]ot pursuit' means some sort of a chase, but need not be an extended hue and cry 'in  and about (the) public streets.'"[30]  That Officer Waukazoo lost sight of Red Bird for a brief period did not make it any less "immediate or continuous" than other hot pursuit cases – especially those in which officers had probable cause to arrest a suspect in a public place for a jailable offense.[31]  Waukazoo

---

[28]*See Santana*, 427 U.S. at 43.

[29]*See id.*  at 42-43.

[30]*Id.*

[31]*period Stanton*, 571 U.S. at 4-5, 8-9; *Santana*, 427 U.S. at 43; *Anderson*, 688 F.3d at 341-42, 344-45; *Schmidt*, 403 F.3d at 1011-15; *United States v. Leveringston*, 397 F.3d 1112, 1117-18 & n. 2 (8th Cir. 2005); *see also Mason v. Godinez*, 47 F.3d 852, 856 (7th Cir. 1995) (officer's actions deemed "consistent with the hot pursuit exception"; witness pursued robber to rear yard of house and then returned to store robbed and so advised police who immediately went to and entered house); *United States v. Ziegler*, 136 F.Supp.2d 981, 989-90 (D.S.D. 2001) (BIA officer was in hot pursuit of defendant where officer was involved in pursuit and apprehension of defendant for 30 minutes); *State v. Richter*, 235 Wis.2d 524, 541-43, 612 N.W.2d 29, 37-38 (2000) (officer responding to a report of burglary in process was told by victim that she saw intruder flee into trailer home across the street; officer's entry was in hot pursuit, as he picked up the trail of a fleeing suspect from an eye witness account and his response and pursuit of suspect was immediate and continuous upon his arrival on scene and rapid collection of information regarding suspect's whereabouts); *State v. Ricci*, 144 N.H. 241, 245, 739 A.2d 404, 407 (1999) ("momentary pause" did not interrupt otherwise immediate and continuous pursuit of defendant into his home); *People v. McDowell*, 46 Cal.3d 551, 562-64, 763 P.2d 1269, 1274-75 (1988) (officer followed trail of blood into neighboring house; entry into home proper as officer was in hot pursuit); *State v. Glass*, 431 So.2d 842, 845 (La. Ct.
(continued. . .)

13

had specialized training and many years of experience in tracking people.[32]   He and

Sheriff Sudbeck followed a defined and consistent footprint pattern in the snow to the

trailer house.[33]   Their pursuit was sufficiently "fresh" and "hot" to justify applying the

exception.[34]

---

App. 1983) (pursuit sufficiently hot where robbery victim described defendant and direction of flight and pedestrian and then motel owner provided information tracing described persons to particular room where police entered 15 to 30 minutes later); *see generally 3 Search and Seizure*, §6.1(d), n.150 (courts have upheld warrantless entries where pursuit was somewhat less "hot" than in *Hayden* and *Santana*); *Searches and Seizures, Arrests and Confessions*, §10.9 ("[W]hen the police have good cause to believe they are actually on the trail of a suspect, even though the commission of the offense is not recent, hot pursuit has been applied.")

[32]*See* Mot. Hrg. Tr. 19-21.

[33]*See* Mot. Hrg. Tr. 11, 16, 19-22, 31, 55, 57, 215.

[34]*See United States v. Franklin*, No. 5:11-CR-42-KKC, 2011 WL 5827605 at **3-5 (E.D. Ky. Aug. 31, 2011) (concluding that facts of case were well within outer perimeter of hot pursuit exception envisioned in *United States v. Holland*, 511 F.2d 38 (6th Cir. 1975), where officer tracked thief's footprints in snow directly to thief's front door), *R&R adopted*, 2011 WL 5827600 (E.D. Ky. Nov. 18, 2011);  *Commonwealth v. Garner*, 59 Mass. App. Ct. 350, 365-66, 795 N.E.2d 1202, 1215 (2003) (officers who tracked freshly made footprints in snow to house were in hot pursuit of shooting suspect); *State v. Dow*, 256 MT 126, 131-32, 844 P.2d 780, 784 (1992) (holding that when officers tracked robbery suspect's footprints in snow from scene of crime directly to motel room, warrantless entry was justified under "warm" pursuit); *State v. Stupi*, 231 N.J. Super. 284, 286-88, 555 A.2d 681, 682-83 (1989) (finding exigent circumstances when robbery had "just" been committed and officers followed trail through snow leading directly to defendant's house); *State v. Campbell*, 104 Idaho 705, 711-13, 662 P.2d 1149, 1156-57 (1983) (officer followed footprints in snow for nearly 40 minutes to residence; police had reason to believe suspects in house and could properly enter it without warrant); *see also State v. Ionescu*, 2019 WI App. 68, ¶¶ 11-16, 937 N.W.2d 90, 93-96 (police officer and his trained tracking dog were in hot pursuit of burglary suspect when they made warrantless entry onto private property of suspect's mother for purpose of tracking suspect's footprints and scent up to motorhome door; officer and dog began tracking suspect just minutes

(continued. . .)

14

Second, whatever delay there may have been was Red Bird's own doing. He was the one who fled to the trailer house and hid in a closet of it.[35] His own conduct – which prevented any on-the-scene apprehension – cannot now be used to stymie Officer Waukazoo and Sheriff Sudbeck's dogged pursuit of him into the home.[36]

## C. Resistance to Illegal Arrest

In any event, even if Officer Waukazoo and Sheriff Sudbeck's warrantless entry into and search of the trailer was unlawful, Red Bird is still not entitled to dismissal of the Indictment. This is because Red Bird's hostile actions, in and around the patrol car, provided an independent ground for his arrest.

In this Circuit, "resistance to an illegal arrest can furnish grounds for a second, legitimate arrest."[37] "When a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's Exclusionary Rule does not bar evidence

---

after suspect fled from another homeowner's garage and after learning in which direction suspect had fled; officer and dog engaged in immediate and continuous pursuit of suspect for 20 to 25 minutes).

[35]*See* Mot. Hrg. Tr. 10-11, 48; Mot. Hrg. Exs. 1 at 3, 1A, 5 at 8, 8.

[36]*See Santana*, 427 U.S. at 42-43; *Schmidt*, 403 F.3d at 1013-15; *see also United States v. Sharpe*, 470 U.S. 675, 687-88 (1985) (delay attributable almost entirely to defendant's evasive actions in eluding police about which he complains); *see generally 3 Search and Seizure*, §6.1(d), nn. 157.50-57.70 (discussing *Stanton* and courts' reliance on it in upholding hot pursuit entries where suspect's act of fleeing constituted jailable offense).

[37]*Schmidt*, 403 F.3d at 1016.

of the new crime."[38]  "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct made."[39]

Red Bird forfeited any Fourth Amendment protection by resisting Officer Waukazoo in the performance of his official duties.  Red Bird's resistance involved physical contact and took place in, or just outside, Waukazoo's car right after the trailer house arrest.[40]  This contact is what led Red Bird to be indicted for the AFO offense. Having forcibly interfered in his own arrest and detention, Red Bird cannot now complain or, more importantly, be rewarded with a dismissal of the Indictment.[41]

---

[38]*United States v. Hunt*, 372 F.3d 1010, 1012 (8th Cir. 2004).

[39]*Schmidt*, 403 F.3d at 1016 (*quoting United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982)).

[40]Mot. Hrg. Tr. 12-13, 75-77, 89-90.

[41]*See Schmidt*, 403 F.3d at 1016; *United States v. Waupekenay*, 973 F.2d 1533, 1536-38 (10th Cir. 1992); *see also United States v. Sledge*, 460 F.3d 963, 966-68 (8th Cir. 2006) (defendant's actions provided independent grounds to arrest him for obstructing police officer and resisting arrest); *United States v. Collins*, 200 F.3d 1196, 1197-98 (8th Cir. 2000) (even assuming defendant's arrest for assault was invalid, his "resistance provided independent grounds for his arrest"); *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) ("a defendant's response to even an invalid arrest . . . may constitute independent grounds for arrest"); *Bailey*, 691 F.2d at 1016-17 (holding that despite "a strong casual connection . . . between lawless police conduct and a defendant's response," police may arrest defendant if his response constitutes new, distinct crime); *United States v. Nooks*, 446 F.2d 1283, 1288 (5th Cir. 1971) (taint from illegal arrest dissipated where defendant fled and shot directly at arresting officer); *United States v. Maestas*, CR No. 18-2419 JCH, 2019 WL 1085164 at **2-3 (D.N.M. March 7, 2019) (separate, independent crime initiated against police officer after arrest – spitting on officer in his car – will not be suppressed under the Fourth Amendment) *United States v. Staten*, No. 14-0006-01-CR-W-HFS, 2015

(continued. . .)

## D.  Statements

Red Bird next claims that his statements – at the trailer house and while being escorted to Officer Waukazoo's patrol car – were obtained in violation of *Miranda* and should be suppressed.  Red Bird made the statements before being Mirandized.  And there is no dispute that Red Bird was in custody when he spoke.  The only question is whether the statements were the product of interrogation.

Under the Fifth Amendment, a suspect is guaranteed the right to remain silent and to the assistance of counsel during custodial interrogation.[42]  If the suspect is not informed of his rights while in custody, then any statements gained from interrogating

---

WL 461845 at *8 (W.D. Mo. Feb. 4, 2015) (resisting illegal arrest can furnish grounds for second, legitimate arrest; defendant's resisting officer's attempt to perform pat-down search and subsequently fleeing from officer cost defendant opportunity to make Fourth Amendment challenge); *United States v. LaDeaux*, CR. 11-50128-JLV, 2012 WL 1609913 at *6 (D.S.D. May 8, 2012)  ("[E]vidence relating to an alleged separate, independent offense [was] not tainted by [officers'] unlawful entry into [residence]. This evidence is not fruit of the poisonous tree and is not subject to the Exclusionary Rule of the Fourth Amendment."); *United States v. Ivey*, 313 F.Supp.2d 1242, 1252 (D. Del. 2004) (when defendant commits new and distinct crime in presence of officers, even if it is in response to official misconduct, evidence of – and resulting from -- that crime may be admissible); *State v. Miskimins*, 435 N.W.2d 217, 221-22 (S.D. 1989) (even if police officers did not comply with arrest statute, defendant's actions of assaulting officer constitute probable cause to arrest defendant; thus suppression of physical evidence seized from and statements made by defendant was not required); *see generally* 6 *Search and Seizure*, §11.4(j), nn. 552, 571-79 (when police conduct illegal arrest or search and person arrested or subject to search reacts by attacking officer, courts have held that evidence of new crime is admissible as "free and independent action," or under rationale that Exclusionary Rule does not justify extension to this extreme because doing so would give victims of arrest or search green light to assault officers).

[42]*See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).

him are ordinarily inadmissible as substantive evidence.[43]  For purposes of *Miranda*, an "interrogation . . . must reflect a measure of compulsion above and beyond that inherent in custody itself."[44]

"Interrogation" includes not only express questioning, but also words or conduct an officer should know are "reasonably likely to elicit an incriminating response from the suspect."[45]  This latter test "focuses primarily on the perceptions of the suspect, rather than the intent of the police . . . . A practice that the police should know is reasonably likely to evoke an incriminating response from [the] suspect thus amounts to interrogation."[46]

Officer Waukazoo's questions to Red Bird (about why he ran, whether he was just drinking and only had alcohol in his system, whose house it was, and whether he was still on paper with the feds or state)[47] were not ones seeking "routine booking" information and hence exempt from *Miranda's* coverage.   The reason is simple:

---

[43]*See Dickerson v. United States*, 530 U.S. 428, 432, 441 (2000); *Stansbury v. California*, 511 U.S. 318, 322 (1994); *Oregon v. Elstad*, 470 U.S. 298, 317 (1985); *United States v. Sanchez*, 676 F.3d 627, 630 (8th Cir. 2012).

[44]*Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989) (*quoting Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)).

[45]*Pennsylvania v. Muniz*, 496 U.S. 582, 600-01 (1990) (*quoting Innis*, 446 U.S. at 301).

[46]*Innis*, 446 U.S. at 301.

[47]*See* Mot. Hrg. Ex. 8; *see also* Mot. Hrg. Ex. 7 at 2-5 (transcript of Officer Waukazoo's body camera after Red Bird's apprehension at trailer).

Waukazoo should have been reasonably aware that the information he sought – with his questions – was directly relevant to the tribal offenses he believed Red Bird had committed and would potentially lead to incriminating responses.[48]

Although statements taken in violation of *Miranda* cannot be used as substantive evidence, they may be admissible to impeach the conflicting testimony of a defendant.[49] It is only when the defendant's statements are involuntary that they must be excluded for all purposes.[50]  If they are "the product of a rational intellect and free will"[51] then they are admissible.

Based on the body camera recording made of the conversations at the trailer house and en route to Officer Waukazoo's car, the Court is satisfied that Red Bird's statements were not "extracted by threats, violence or express or implied promises sufficient to overbear [his] will and critically impair his capacity for self-

---

[48]*See United States v. Jackson*, 852 F.3d 764, 772-73 (8th Cir. 2017); *United States v. Cowan*, 674 F.3d 947, 958 (8th Cir. 2012); *see also and compare with United States v. Sanchez-Velasco*, 956 F.3d 576, 582-83 (8th Cir. 2020) (questions not directly relevant to potential substantive offenses, only civil removal proceedings); *United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996) (defendant's name not directly relevant to substantive offense charged, but wholly incidental and not investigative in nature).

[49]*See Oregon v. Hass*, 420 U.S. 714, 721-23 (1975); *Harris v. New York*, 401 U.S. 222, 224-26 (1971).

[50]*See New Jersey v. Portash*, 440 U.S. 450, 459 (1979); *Mincey v. Arizona*, 437 U.S. 385, 389 (1978).

[51]*Mincey*, 437 U.S. at 398 (citations omitted).

determination.[52]  The record as a whole establishes that his statements were voluntary and not the emanation of coercive interrogation or overreaching on the part of Waukazoo or Sheriff Sudbeck.[53]

Red Bird spoke with and responded to Officer Waukazoo's questions.  While doing so, Red Bird denied that he ran from Waukazoo, did anything wrong, or slapped anyone's car.[54]

Red Bird was not impermissibly coerced.  His statements were ones he wanted to make and were not the outcome of an environment and questioning that was so menacing it subdued his will and thwarted his decision-making capacity.  The statements thus may be used at trial should he elect to testify in his own defense.[55]

**E.  Tainted Fruit**

Red Bird lastly claims that the poisonous fruit of the warrantless in-home entry and arrest – his statements to Officer Waukazoo and the AFO Indictment – should be

---

[52]*United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*) (*quoting Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001)); *see also Hass*, 420 U.S. at 722-23 (holding that suspect's statements, made after he continued interrogation following his request for attorney, were voluntary for impeachment purposes where "the pressure on him was no greater than that on any person in like custody or under inquiry by any investigating officer").

[53]*See Hass*, 420 U.S. at 722-23; *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

[54]*See* Mot. Hrg. Exs. 7, 8.

[55]*See Hass*, 420 U.S. at 723; *Harris*, 401 U.S. at 224.

suppressed and dismissed, respectively, under *Wong Sun*[56] and the Exclusionary Rule. The Court agrees that any pre-assault statements Red Bird made while subject to arrest should be excluded as evidence at trial, except for impeachment purposes if he testifies. But his post-arrest attack and assault on Waukazoo were independent and intervening acts that purged the taint of any Fourth Amendment violation. Because of these acts, there was no exploitation of any prior assumed illegality involved. Extending the jaws of the Exclusionary Rule to conduct like that here would give victims of unlawful arrests and searches authority to commit crimes against the police with impunity whenever such crimes stem from police misconduct and are in the causal chain of that misconduct – a scenario far too reaching and too high a price to pay for deterrence.[57] Red Bird therefore is not entitled to dismissal of his federal offense or suppression of evidence derived from the initial arrest, other than the statements just mentioned, and then only as evidence the government can use in the presentation of its case.

---

[56] *See Wong Sun v. United States*, 371 U.S. 471 (1963).

[57] *See United States v. Pryor*, 32 F.3d 1192, 1195-96 (7th Cir. 1994); *United States v. Sprinkle*, 106 F.3d 613, 619-20 (4th Cir. 1997); *Bailey*, 691 F.2d at 1017-18; *People v Tomaske*, 2019 CO 35, ¶¶19-20, 440 P.3d 444, 448-49; *Tims v. State*, 204 So.3d 536, 539-40 (Fla. Dist. Ct. App. 2016); *Cavanaugh v. Commonwealth*, 427 S.W.3d 178, 181 (Ky. 2014); *State v. Herrerra*, 211 N.J. 308, 337-38, 48 A.3d 1009, 1026-27 (2012); *State v. Panarello*, 157 N.H. 204, 208-09, 949 A.2d 732, 736-37 (2008); *Miskimins*, 435 N.W.2d at 222; *see also* 6 *Search and Seizure*, §11.4(j), nn. 578-79 (Exclusionary Rule not intended to give victims of illegal searches a license to assault officer – a result "manifestly unacceptable").

## CONCLUSION

Red Bird has standing to contest the warrantless search and arrest in Bruce's trailer. But one or more officers (1) reasonably believed the trailer was abandoned; (2) were in hot pursuit of Red Bird and could enter the trailer and arrest him without a warrant; and (3) could independently arrest Red Bird for assaulting Officer Waukazoo during the jail transport. Nevertheless, Waukazoo's unwarned queries, after Red Bird's arrest, violated the proscriptions of *Miranda* and are inadmissible as substantive – but not impeachment – evidence.

## RECOMMENDATION

Accordingly, based on the authorities and legal analysis set forth in this report, and the record now before the Court, it is hereby

RECOMMENDED that Red Bird's Motion to Dismiss or in the Alternative to Suppress[58] be granted in part and denied in part. The Motion should be granted to the extent that it seeks to suppress Red Bird's post-arrest statements and prohibit the government from using them at trial in its case-in-chief. The Motion, however, should be denied in all other respects.

---

[58]*See* Dkt. No. 29.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[59] Unless an extension of time for cause is later obtained,[60] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[61]   Objections must "identify[] those issues on which further review is desired[.]"[62]

Dated this 20th day of August, 2020, at Pierre, South Dakota.

**BY THE COURT:**

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[59]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[60]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[61]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[62]*Arn*, 474 U.S. at 155.