UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK RED BIRD,<br><br>Defendant. | 3:20-30026-RAL<br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART MOTION TO SUPPRESS AND DENYING MOTION FOR PRODUCTION IN PART AND GRANTING MOTION TO QUASH |

The Government charged Patrick Red Bird with assaulting, resisting, and impeding a federal officer in violation of 18 U.S.C. §§ 111(a) and 111(b). Doc. 1. Red Bird moved to dismiss the indictment, or in the alternative, suppress evidence of the assault and certain post-arrest statements on the basis that the officers violated his Fourth and Fifth Amendment rights. Doc. 29. Magistrate Judge Mark A. Moreno held a suppression hearing. Docs. 37, 40, 44. Thereafter, Judge Moreno filed a Report and Recommendation, recommending that Red Bird's motion be granted in part and denied in part. Doc. 56. Red Bird filed objections to the Report and Recommendation, challenging some of Judge Moreno's factual findings and legal conclusions. Doc. 63.

In addition to objecting to the Report and Recommendation, Red Bird also appeals two of Judge Moreno's decisions relating to discovery. First, Red Bird appeals Judge Moreno's opinion and order granting in part and denying in part defendant's motion for production of law enforcement records and files to the extent that Judge Moreno declined an in camera review of the law enforcement personnel records and files belonging to former Todd County Sheriff Deputy Wesley Sudbeck and Mission City Chief of Police Barry Bailey. Doc. 61. Red Bird also appeals

1

Judge Moreno's opinion and order granting the government's motion to quash the subpoena duces tecum served by Red Bird on Rosebud Sioux Tribal Police Officer Bryan Waukazoo. Doc. 62. This Court will take up all three matters, addressing each in turn.

I. **Motion to Dismiss the Indictment, or in the Alternative Suppress**

A. **Factual Background**

On December 27, 2019, Officer Bryan Waukazoo received a call from dispatch that a male subject in Mission, South Dakota, was hitting the backs of cars and that the same male subject had fallen face first in a snowbank. Mot. Hr'g Tr. at 9. Officer Waukazoo responded to the call and observed a man matching dispatch's description. Mot. Hr'g Tr. at 9. Officer Waukazoo observed the man sit down and fall over. Mot. Hr'g Tr. at 10. Then the man jumped up as another subject approached him, and it appeared to Officer Waukazoo that the man was trying to fight the newcomer. Mot. Hr'g Tr. at 10. At that time, Officer Waukazoo exited his patrol vehicle and identified himself. Mot. Hr'g Tr. at 10. In response, the man walked away hastily, eventually breaking into a run. Mot. Hr'g Tr. at 10.

Officer Waukazoo got back into his patrol vehicle to search for the man, and he requested assistance from Sheriff Sudbeck and Chief Bailey. Mot. Hr'g Tr. at 10–11. Once Sheriff Sudbeck and Chief Bailey had arrived, all three officers proceeded to look for the man on foot. Mot. Hr'g Tr. at 11. In doing so, they observed tracks in the snow leading up to a red trailer home. Mot. Hr'g Tr. at 11. To Officer Waukazoo, the trailer home appeared abandoned, and the front door was missing a doorknob. Mot. Hr'g Tr. at 11. The officers announced themselves and knocked at the door; because the door had no doorknob, each time they knocked, the door opened further. Mot. Hr'g Tr. at 11, 30. After the door had opened enough to reveal the interior of the trailer home, the officers decided to enter and search for the male subject, room by room. Mot. Hr'g Tr. at 11.

Once inside, the officers found the man that Officer Waukazoo had encountered earlier, hiding in a bedroom closet. Mot. Hr'g Tr. at 11. They identified him as Patrick Red Bird, the defendant in this case. Mot. Hr'g Tr. at 31–32. Thereafter, they placed Red Bird under arrest, and Officer Waukazoo escorted Red Bird to a patrol vehicle to transport him to the Rosebud jail. Mot. Hr'g Tr. at 11–12. While in the back of the patrol car en route to the jail, Red Bird slipped his handcuffs from behind his body to the front of his body and freed one of his hands from the wrist restraints. Mot. Hr'g Tr. at 12. Upon noting that Red Bird freed his hand, Officer Waukazoo stopped the vehicle to fix Red Bird's wrist restraints. Mot. Hr'g Tr. at 12. But once again, Red Bird slipped his handcuffs from behind his body to the front of his body. Mot. Hr'g Tr. at 12. When Officer Waukazoo attempted to restrain Red Bird once more, Red Bird pulled away and shoved Officer Waukazoo in an effort to escape. Mot. Hr'g Tr. at 12–13. Then a struggle ensued. Mot. Hr'g Tr. at 13. At some point, Red Bird allegedly grabbed hold of, and began to squeeze, Officer Waukazoo's neck and throat. Mot. Hr'g Tr. at 12–13, 75–77, 89–90. Officer Waukazoo delivered four punches to the face to break Red Bird's grip. Mot. Hr'g Tr. at 13, 77. Once Red Bird had loosened his grip, Officer Waukazoo forced Red Bird into the car and sprayed him with an OC agent. Mot. Hr'g Tr. at 13, 78. Finally, Red Bird quit resisting, and the officers were able to successfully transport him to the jail. Mot. Hr'g Tr. at 13.

**B. Discussion**

This Court reviews a report and recommendation under 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required 'to give any more consideration to the magistrate's report than the court considers appropriate.'"

United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having conducted a de novo review of those portions of the Report and Recommendation to which Red Bird objects, this Court adopts the Report and Recommendation as supplemented by this opinion.

### 1. Dismissal of Indictment

Red Bird's primary argument is that the indictment should be dismissed because the governmental officials engaged in outrageous conduct in violation of the Due Process Clause of the Fifth Amendment. Like the Supreme Court in United States v. Russell, 411 U.S. 423, 431–32 (1973), the Eighth Circuit has "left open the possibility that, in rare instances, the investigative methods employed by law enforcement could be 'so outrageous that due process bars the government from invoking the judicial process to obtain a conviction.'" United States v. Combs, 827 F.3d 790, 794 (8th Cir. 2016) (quoting United States v. King, 351 F.3d 859, 867 (8th Cir. 2003)). This defense will rarely apply as it is "reserved for conduct that falls within the narrow band of the most intolerable government conduct." Combs, 827 F.3d at 794–95 (cleaned up and citation omitted); see also United States v. Hunt, 171 F.3d 1192, 1195 (8th Cir. 1999) ("The level of outrageousness needed to prove a due process violation is quite high . . . .") (cleaned up and citation omitted)). Such conduct violates "fundamental fairness" and shocks "the universal sense of justice." Combs, 827 F.3d at 794–95 (quoting Russell, 411 U.S. at 432). While the defense is similar to and often raised with the defense of entrapment, the defenses are distinguishable in that the defense of entrapment focuses on the predisposition of the defendant whereas the defense of outrageous government conduct focuses on the government's actions. Hunt, 171 F.3d at 1195.

Red Bird argues that the indictment should be dismissed because of the government's allegedly outrageous conduct which he describes as "entering the home without a warrant to arrest

[him] for minor misdemeanor offenses based on ambiguous evidence, some of which did not even occur in the officers' presence." Doc. 63 at 4. After examining all the facts and circumstances surrounding this case, the defense is simply not applicable here. The government's conduct falls well short of outrageous government conduct violative of the Due Process Clause of the Fifth Amendment, and there is no claim that the government somehow entrapped Red Bird or induced him to engage in the criminal activity at issue. Judge Moreno properly concluded that dismissal was not warranted.

2. **Suppression of Evidence**

In the alternative, Red Bird argues that the conduct giving rise to the indictment should be suppressed based on the Fourth Amendment. Absent special circumstances, the Supreme Court has "consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." Steagald v. United States, 451 U.S. 204, 211–12 (1981). But of course, "because the ultimate touchstone of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions." Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (cleaned up and citations omitted). The government bears the burden of showing that an exception exists. United States v. James, 353 F.3d 606, 613 (8th Cir. 2003).

Here, it is undisputed that the officers entered the trailer home without a warrant to arrest Red Bird. Judge Moreno found that the officers' actions were justified because they acted under the reasonable, but mistaken, belief that the trailer home was abandoned and were in hot pursuit of a fleeing suspect. Red Bird challenges both of these legal conclusions as well as many of the factual findings underlying these conclusions. However, this Court need not address those

objections because, as found by Judge Moreno, Red Bird's conduct after the arrest provided an independent basis for a second, legitimate arrest.

The Eighth Circuit has recognized that "resistance to an illegal arrest can furnish grounds for a second, legitimate arrest." United States v. Sledge, 460 F.3d 963, 966 (8th Cir. 2006) (quoting United States v. Schmidt, 403 F.3d 1009, 1016 (8th Cir. 2005)). "When a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's exclusionary rule does not bar evidence of the new crime." United States v. Hunt, 372 F.3d 1010, 1012 (8th Cir. 2004). "A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct." Schmidt, 403 F.2d at 1016 (quoting United States v. Bailey, 691 F.2d 1009, 1016–17 (11th Cir. 1982) (concluding that "notwithstanding a strong causal connection in fact between lawless police conduct and a defendant's response, if the defendant's response is itself a new, distinct crime, then the police constitutionally may arrest the defendant for that crime")). "Moreover, sound policy reasons obviously argue that the law should discourage and deter the incentive on the part of potential arrestees to forcibly resist arrest or to commit other new and separate crimes." Bailey, 691 F.2d at 1017.

Although Red Bird objects to Judge Moreno's factual findings as to what happened in the patrol car on the way to the Rosebud jail, this Court finds that Judge Moreno's characterization of the event is supported by Officer Waukazoo's testimony at the suppression hearing. Further, these factual findings create an independent basis for a second, legitimate arrest because, if Officer Waukazoo's testimony is believed, Red Bird committed a new and distinct crime when he assaulted Officer Waukazoo and attempted to escape the patrol car. Judge Moreno properly concluded that the exclusionary rule does not require evidence of the assault to be suppressed,

regardless of whether the arrest inside the trailer home was unlawful. For these reasons, Red Bird's objections to the report and recommendation are overruled.

## II. Motion for Production of Law Enforcement Records and Files

Red Bird also moved for an order from Judge Moreno requiring the government to either provide defense counsel with the law enforcement personnel files and records of Officer Waukazoo, Sheriff Sudbeck, and Chief Bailey or, in the alternative, provide such files and records to Judge Moreno for his own in camera review. Docs. 35, 36. Judge Moreno issued an order granting in part and denying in part Red Bird's motion to produce. Doc. 55. Of particular relevance here, Judge Moreno denied Red Bird's motion to the extent that it sought the personnel files and records of Sheriff Sudbeck and Chief Bailey. Doc. 55 at 6–7. Red Bird appeals that portion of Judge Moreno's decision. Doc. 61.

A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a); see also Ferguson v. United States, 484 F.3d 1068, 1076 (8th Cir. 2007). Under other circumstances, the Supreme Court has stated that "[a] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (cleaned up and citation omitted). "A decision is 'contrary to law' when it fails to apply (or misapplies) relevant statutes, case law, or rules of procedure." Edeh v. Midland Credit Mgmt., Inc., 748 F. Supp. 2d 1030, 1043 (D. Minn. 2010) (citation omitted). Thus, the standard of review is "deferential." United States v. Simmermaker, 423 F. Supp. 3d 626, 631 (N.D. Iowa 2019) (citing Dixon v. Crete Med. Clinic, P.C., 498 F.3d 837, 846–47 (8th Cir. 2007)).

Red Bird asserts that Judge Moreno's decision is clearly erroneous or contrary to law because Sheriff Sudbeck's and Chief Bailey's law enforcement personnel files are discoverable under United States v. Bagley, 473 U.S. 667 (1985), Giglio v. United States, 405 U.S. 150 (1972), Brady v. Maryland, 373 U.S. 83 (1963), as well as under Rule 16 of the Federal Rules of Criminal Procedure. Doc. 61 at 4. The Supreme Court held in Brady "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Included among the evidence that Brady obligates the prosecution to disclose is both exculpatory evidence and impeachment evidence, that is, "evidence affecting credibility," Giglio, 405 U.S. at 154, or "evidence that the defense might [use] to impeach the Government's witnesses by showing bias or interest," Bagley, 473 U.S. at 676. To trigger Brady and its progeny, "[a] finding of materiality of the evidence is required . . . ." Giglio, 405 U.S. at 154. Evidence is material under Brady if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Ryan, 153 F.3d 708, 712 (8th Cir.1998) (quoting Kyles v. Whitley, 514 U.S. 419, 433– 34 (1995)).

The Eighth Circuit has stated that "[m]ere speculation that a government file may contain Brady material is not sufficient to require . . . *in camera* inspection." United States v. Pou, 953 F.2d 363, 366–67 (8th Cir. 1992) (quoting United States v. Navarro, 737 F.2d 625, 631 (7th Cir. 1984)). Other circuits have also held that the government need not turn over law enforcement personnel files or produce them for in camera inspection when the defendant's assertion that such files contain material evidence is merely speculative. See United States v. Quinn, 123 F.3d 1415, 1421–22 (11th Cir. 1997) (holding that the government is not required to disclose the contents of

personnel files or produce the files for the district court's inspection when the defendant has failed to demonstrate that the contents contain material evidence); United States v. Driscoll, 970 F.2d 1472, 1482 (6th Cir. 1992) (holding that the district court's refusal to order the disclosure of the testifying officers' personnel files did not violate Brady when the defendant "offered no support for his contention that personnel files might contain information important to his case."), abrogated on other grounds by Hampton v. United States, 191 F.3d 695 (6th Cir. 1999); United States v. Andrus, 775 F.2d 825, 843 (7th Cir. 1985) (holding that the defendant "was not entitled to the personnel files of the law enforcement witnesses without even a hint that impeaching material was contained therein"). But see United States v. Henthorn, 931 F.2d 29, 31 (9th Cir. 1991) (holding that the defendant does not have to make an initial showing of materiality before the government is required to examine personnel files).

      Rule 16 of the Federal Rules of Criminal Procedure also requires a showing of materiality. Rule 16, which sets forth the types of information the government must disclose to defendants in discovery, requires disclosure of information that is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Evidence is material under Rule 16 if it is "helpful to the defense," United States v. Vue, 13 F.3d 1206, 1208 (8th Cir. 1994), and "enables a defendant significantly to alter the quantum of proof in his or her favor," United States v. Baker, 453 F.3d 419, 425 (7th Cir. 2006). The defendant bears the burden of showing materiality under Rule 16. United States v. Jean, 891 F.3d 712, 715 (8th Cir. 2018); Vue, 13 F.3d at 1208. A showing of materiality requires more than "a mere conclusory allegation" of the requested information's materiality. United States v. Krauth, 769 F.2d 473, 476 (8th Cir. 1985) (discussing predecessor Rule 16(a)(1)(C)) (citation omitted). See also United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990) ("Neither a general description of the information sought nor conclusory allegations of materiality suffice; a

defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense."). In sum, neither Brady and its progeny nor Rule 16 require the government to produce personnel files when the defendant's assertion that the files contain impeachment evidence is speculative or conclusory.

Judge Moreno found that Red Bird failed to make any kind of showing that there may be impeachment evidence in Sheriff Sudbeck's or Chief Bailey's law enforcement personnel files. This Court agrees. Unlike Officer Waukazoo, see Doc. 52-1, there is nothing within either officer's law enforcement history that would suggest any alleged past wrongdoing or impropriety. Thus, as Judge Moreno characterized it, Red Bird's request is "speculative" and "more a fishing expedition to find something to use against the two officers." Doc. 55 at 7. Red Bird has not made the requisite showing of materiality under Brady or Rule 16. As such, Judge Moreno's decision was not clearly erroneous or contrary to law.

### III. Motion to Quash Subpoena Duces Tecum

Finally, Red Bird appeals Judge's Moreno's opinion and order granting the government's motion to quash the subpoena duces tecum served by Red Bird on Officer Waukazoo. Doc. 62. At the suppression hearing, Officer Waukazoo testified on direct examination that he believed there were three or four video clips of body camera footage related to the incident involving Red Bird on December 27, 2019. Mot. Hr'g Tr. at 27. The prosecutor asked him if it were possible that there may only be two video clips from the day in question, and he responded, "Oh, yeah, it could have only been two." Mot. Hr'g Tr. at 27. When defense counsel asked him why he thought there may be as many as four video clips, Officer Waukazoo replied that he was not sure how many video clips there were. Mot. Hr'g Tr. at 45. He did clarify, however, that he did not erase any video clips,

nor has he ever erased any video clips and that the footage available from that day could be found on a hard drive at the police department. Mot. Hr'g Tr. at 45–46.

Based on this testimony alone, Red Bird subpoenaed Officer Waukazoo and directed that he produce the hard drive at the next hearing so that a defense-hired expert could review it to see if there were more than two video clips related to the incident in question and whether any video clips had been erased. Doc. 39; Mot. Hr'g Tr. at 123–24. In response, the government filed a motion to quash the subpoena duces tecum. Doc. 43. Judge Moreno issued an opinion and order granting the government's motion. Doc. 54. This Court should overturn the magistrate court's opinion and order granting the motion to quash under 28 U.S.C. § 636(b)(1)(A) "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."

Red Bird argues that Judge Moreno's decision is clearly erroneous or contrary to law. Doc. 62 at 1. He contends that he has made the required showing under Rule 17 of the Federal Rules of Criminal Procedure to gain access to the hard drive via subpoena. Doc. 62 at 7. He also asserts that he is entitled to the hard drive under Brady and Giglio. Doc. 62 at 8. Rule 16 of the Federal Rules of Criminal Procedure governs discovery and inspection, but has no provision for issuance of subpoenas. Rule 17(c), which addresses subpoenas for documents and objects, does not give defendants a means of discovery in criminal cases but rather was designed "to expedite the trial by providing a time and place before trial for the inspection and of subpoenaed materials." United States v. Nixon, 418 U.S. 683, 698–99 (1974); see also Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest of terms."). The Supreme Court in Nixon explained that the moving party under Rule 17(c) must show that the information sought is relevant, requested with adequate specificity, and is admissible. Nixon, 418 U.S. at 700. The

11

"specificity and relevance elements require more than the title of a document and conjecture as to its contents." United States v. Hardy, 224 F.3d 752, 755 (8th Cir. 2000) (citation omitted).

A party requesting production before trial also must show that the information is "not otherwise procurable reasonably in advance of trial by exercise of due diligence," that "the party cannot properly prepare for trial without such production," and that "the application is made in good faith and is not intended as a general 'fishing expedition.'" Nixon, 418 U.S. at 699–700. The Eighth Circuit has applied the Nixon test in criminal cases involving a subpoena duces tecum to a third party. United States v. Bradford, 806 F.3d 1151, 1155 (8th Cir. 2015); United States v. Hang, 75 F.3d 1275, 1283 (8th Cir. 1996); see also United States v. Rand, 835 F.3d 451, 463–64 (4th Cir. 2016) (holding that the Nixon standard applies to subpoenas to third parties under Rule 17(c)).

Red Bird's argument for production of the hard drive rests upon mere speculation. Officer Waukazoo's testimony at the suppression hearing does not provide a basis for suspecting that he or anyone else within the tribal police department deleted any of the recordings related to the incident from that day. Officer Waukazoo's testimony revealed that he was simply unsure of how many video clips existed from that day. However, he was clear that he did not erase any such video clips, nor has he ever erased any video clips from an investigation. To suggest that there may be additional video clips on the hard drive on the basis of Officer Waukazoo's testimony alone is speculative and, as Judge Moreno phrased it, "smacks of a fishing expedition." Doc. 54 at 5. Moreover, the government has assured Judge Moreno that it will provide Red Bird with all body camera recordings created by Officer Waukazoo in the course of his encounter with Red Bird from that day. Doc. 43 at 2. This Court takes the government at its word, and as such, Red Bird has failed to show why the hard drive would contain any information beyond what the government has

12

produced and further agreed to provide in discovery. Rather, the hard drive contains countless other videos that have nothing to do with Red Bird or the incident on December 27, 2019. Judge Moreno properly found that Red Bird's subpoena duces tecum failed to meet the three requirements of relevance, specificity, and admissibility. Red Bird also fails to make the required showing of materiality under Brady and Giglio. Doc. 54 at 5. As such, this Court finds that Judge Moreno's decision was not clearly erroneous or contrary to law.

### IV. Conclusion

For the reasons explained herein, it is hereby

ORDERED that the Report and Recommendation for Disposition of Motion to Dismiss or in the Alternative Suppress, Doc. 56, is adopted. It is further

ORDERED that Red Bird's Motion to Dismiss the Indictment or in the Alternative to Suppress, Doc. 29, is granted to the extent that Red Bird's post-arrest statements are suppressed and not to be used in the government's case-in-chief, but is otherwise denied. It is further

ORDERED that this Court affirms the denial of Red Bird's Motion for Production of Law Enforcement Records and Files to the extent that Red Bird sought a court order requiring the production of law enforcement records and files belonging to former Sheriff Sudbeck and Chief Bailey. It is further

ORDERED that this Court affirms the grant of the Government's Motion to Quash. It is finally

ORDERED that Defendant's objections contained in Docs. 61 and 62 are overruled.

DATED this 19th day of October, 2020.

BY THE COURT:

_____

ROBERTO A. LANGE

CHIEF JUDGE